**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**San Antonio Division**

| | |
|---|---|
| CYNTHIA SPENCER, | |
| WILLIAM SPENCER, | Case No.: 5:20-cv-350 |
| LISA JACKSON, | |
| JENNIFER JOHN, | **JURY TRIAL DEMANDED** |
| BRIAN BYRD, and | |
| AMY BYRD | |
|    Plaintiffs, | |
| vs. | |
| CITY OF CIBOLO, TEXAS, | |
| STANLEY "STOSH" BOYLE, | |
| MARK D. ALLEN, | |
| STEVEN QUINN, | |
| and | |
| JOEL HICKS, | |
|    Defendants. | |

## <u>COMPLAINT</u>

### Introduction

1. This is a case about elected officials abusing their office to silence their critics.

2. Nearly sixty years ago, the Supreme Court described the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times v. Sullivan*, 376 U.S. 254, 269-70 (1964).

3. Plaintiffs embody that profound commitment to debate on public issues. Concerned for

their local community of Cibolo, Texas, Plaintiffs have often criticized and questioned the City government, its mayor Stanley "Stosh" Boyle, and city councilmembers Mark Allen, Steven Quinn, and Joel Hicks.

4. Much of Plaintiffs' criticism has focused on Boyle's fitness to hold elected office after the public learned of his felony drug conviction and failure to disclose the conviction when running for office. They also questioned Allen's fitness to hold office, after they discovered public information about Allen's many run-ins with the law.

5. Plaintiffs have also criticized Defendants on issues like censoring their critics on social media, opposing background checks for elected officials, putting city financial resources at risk, and resisting input from citizens with different viewpoints.

6. Emboldened after Boyle escaped removal from office in August 2019, these elected officials have waged war on the First Amendment rights of Plaintiffs and other Cibolo citizens. They have blocked Plaintiffs and other citizens from official social media pages and deleted negative comments to hide them from the public eye. They have allowed their supporters uninhibited speech at city council meetings while impeding their critics' speech during those meetings. And Boyle and Allen have even filed baseless police reports against some of the Plaintiffs, aiming to discourage Plaintiffs and others from criticizing Boyle, Allen, and their allies in the Cibolo government.

7. No citizen should have to endure these constant attacks on their First Amendment rights. This lawsuit seeks to stop those attacks and redress the harms they have caused and continue to cause Plaintiffs and other Cibolo citizens.

**Parties**

8. Plaintiffs Cynthia Spencer, William Spencer, Lisa Jackson, Jennifer John, Brian Byrd,

and Amy Byrd are residents of Cibolo, Texas.

9. Defendant City of Cibolo is a municipality organized under the laws of Texas. Defendant City of Cibolo may be served through service upon the City of Cibolo Secretary, Peggy Cimics, at 200 S Main Street, Cibolo, TX 78108. Defendant City of Cibolo is subject to liability under 42 U.S.C § 1983, as set forth in *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), and as alleged in this Complaint.

10. Defendant Stanley "Stosh" Boyle  is a resident of Cibolo. Boyle is the elected mayor of Cibolo and serves as presiding officer of the Cibolo City Council. Because of his office, Boyle is a public figure. Boyle may be served at his principal place of business at 200 S Main Street, Cibolo, TX 78108. Boyle acted under color of state law at all times relevant, and is a person subject to liability under 42 U.S.C. § 1983. Boyle is a duly elected official of the City of Cibolo and is a final policymaker for the city. Boyle is being sued in his individual and official capacities.

11. Defendant Mark D. Allen  is a resident of Cibolo and city councilman for Cibolo District 5. As an elected official, Allen is a public figure. Allen may be served at his principal place of business at 200 S Main Street, Cibolo, TX 78108. Allen acted under color of state law at all times relevant, and is a person subject to liability under 42 U.S.C. § 1983. Allen is a duly elected official of the City of Cibolo and is a final policymaker for the city. Allen is being sued in his individual and official capacities.

12. Defendant Steven Quinn  is a resident of Cibolo and city councilman for Cibolo District 2. As an elected official, Quinn is a public figure. Quinn may be served at his principal place of business at 200 S Main Street, Cibolo, TX 78108. Quinn acted under color of state law at all times relevant, and is a person subject to liability under 42 U.S.C. § 1983. Quinn is a duly elected official of the City of Cibolo and is a final policymaker for the city. Quinn is being sued in his individual

and official capacities.

13. Defendant Joel Hicks is a resident of Cibolo and city councilman for Cibolo District 7. As an elected official, Hicks is a public figure. Hicks may be served at his principal place of business at 200 S Main Street, Cibolo, TX 78108. Hicks acted under color of state law at all times relevant, and is a person subject to liability under 42 U.S.C. § 1983. Hicks is a duly elected official of the City of Cibolo and is a final policymaker for the city. Hicks is being sued in his individual and official capacities.

### Jurisdiction, Venue, and Joinder

14. This Court has original subject matter jurisdiction under the United States Constitution, 42 U.S.C. §§ 1983, and 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

15. This Court has personal jurisdiction over Defendant City of Cibolo because it is a local government entity of the State of Texas and is in this judicial district.

16. This Court has personal jurisdiction over Defendants Boyle, Allen, Quinn, and Hicks (collectively, the "Individual Defendants") because they reside in the state of Texas and in this judicial district.

17. Venue is proper in this district because Defendants are residents of this judicial district and because Defendants' acts and omissions giving rise to Plaintiffs' claims occurred in this District.

18. Plaintiffs are properly joined because questions of law and fact common to all Plaintiffs will arise in this case.

### <u>GENERAL ALLEGATIONS</u>

**Plaintiffs are active participants in civic life who speak up about local government and community issues.**

19. Plaintiffs are active participants in Cibolo's civic life. They regularly speak out about

local government and community issues, including on social media and during citizen comment periods of city council meetings known as "Citizens To Be Heard."

20. Plaintiffs often express disagreement with the Cibolo government and publicly criticize local officials like the Individual Defendants. They also have made several requests under the Texas Public Information Act (TPIA) for public records about Defendants.

21. Plaintiffs are diverse in their background, education, interests, and where they live in Cibolo. But they share one thing in common—because of the views Plaintiffs have expressed and their efforts to obtain public records, Defendants have engaged in a campaign of unconstitutional viewpoint discrimination and retaliation against Plaintiffs.

### *Brian Byrd*

22. Plaintiff Brian Byrd is a resident of Cibolo. He is a retired Air Force master sergeant and currently works as a consultant. He also served as a Cibolo city councilman from May 2017 until November 2019. Mr. Byrd voluntarily withdrew from consideration for reelection in 2019 after he discovered his campaign paperwork was incomplete. He then asked citizens to support his opponent.

23. While serving as a councilman, Mr. Byrd was the first to bring public attention to Defendant Boyle's felony drug conviction and Boyle's failure to disclose it on his sworn candidate applications for mayor. Byrd first learned of Boyle's felony conviction from a concerned citizen. Mr. Byrd exposing Boyle's criminal history set off a wave of public criticism about Boyle and his fitness to hold office.

24. Because Texas law forbids a felon to hold public office absent a pardon or showing of "resulting disabilities," Byrd raised Boyle's conviction with the city council. The council voted to hold a special hearing on Boyle's fitness to serve as Mayor.

25. Defendants Allen and Hicks voted against the special hearing. Defendant Quinn was not a councilman at the time.  In August 2019, the council held the special hearing, and after a 3-3 vote, did not remove Boyle.

26. Mr. Byrd also sent a complaint to the Texas Attorney General about Boyle's failure to disclose his felony conviction on his sworn candidate application. In September 2019, a grand jury indicted Boyle for felony perjury and tampering with a government document. A trial on Boyle's felony indictment is scheduled for June 2020. Byrd remains as the complaining witness in the matter.

27. Since returning to private life, Mr. Byrd remains an active participant in civic matters. Mr. Byrd often discusses local issues with fellow citizens on Facebook. For example, Mr. Byrd posted comments on Facebook about Defendant Boyle's criminal history and his fitness to hold office. Mr. Byrd has also opined on Defendant Allen's legal problems.

28. As detailed below, Defendants under the color of law have targeted and continue to target Mr. Byrd because of his protected First Amendment activity, including his public commentary about Boyle and his role as a complaining witness in the pending criminal case against Boyle. Boyle's political supporters have targeted Mr. Byrd by making threats to harm him and encouraging others to visit his home.

29. Before Mr. Byrd exposed Boyle's criminal history, he had no serious disputes with Boyle, Allen, Quinn, or Hicks.

30. Mr. Byrd's speech about the Cibolo government and its officials has never constituted a true threat, been intended to incite unlawful activity, or otherwise been speech unprotected under the First Amendment.

### *Cynthia Spencer*

31. Plaintiff Cynthia Spencer is a retired Army lieutenant colonel. She is an active participant in local civic life. She routinely attends city council meetings to speak on public issues. And Mrs. Spencer often discusses local issues with government officials and fellow citizens on Facebook.

32. Mrs. Spencer has questioned and criticized the City and its officials several times. For example, for the period from 2018 to the present :

   a. She spoke out on Facebook and at city council meetings about the City's 2019 "Cibolo Summer Nights" program and questioned Mayor Boyle's failure to secure insurance for the program, which ultimately increased the cost of the program.

   b. On Defendant Allen's Facebook page, she criticized the City's handling of the 2019 Cibolo senior citizens prom and asked a question. Shortly after another citizen answered Mrs. Spencer's question and Mrs. Spencer thanked that citizen, Boyle posted a comment in the same thread criticizing Mrs. Spencer. This caused several citizens to demand that Boyle apologize to Mrs. Spencer.

   c. She publicly supported the recall of Boyle from his position as mayor because of Boyle's felony conviction and his failure to disclose the conviction when running for office. She also has publicly criticized the Cibolo city council's failure to remove Boyle as mayor, both on social media and during citizen comment periods at city council meetings.

   d. She has spoken during Citizens To Be Heard and posted on social media about requiring background checks for elected officials and the Individual Defendants' opposition to those background checks.

   e. She expressed support for a new housing development behind the local high school that would have included a community for senior citizens. This proposal was a facility that Boyle and Hicks opposed.

   f. She questioned Defendant Quinn on his public Facebook group about his support of Boyle given Boyle's felony drug conviction.

33. Mrs. Spencer's speech about the Cibolo government, its officials, and other local issues of public concern never has constituted a true threat, been intended to incite unlawful activity, or otherwise been unprotected under the First Amendment.

34. Since 2018, Mrs. Spencer also has submitted several requests under the Texas Public Information Act (TPIA) for records about City business and its officials. Several of her TPIA requests sought records about the Individual Defendants, including information about use of personal devices to conduct official business and censoring citizen speech on official social media pages.

35. In July 2018, Mrs. Spencer and her husband, Plaintiff William Spencer, submitted an ethics complaint to the Cibolo city manager about Boyle and Hicks. The Spencers complained that Hicks violated the city employee code of conduct by criticizing a city employee on Facebook. They also complained that Hicks and Boyle violated the code of conduct by openly supporting one side of an important local debate about a toll road at public events.

### *William Spencer*

36. Plaintiff William Spencer is a retired Air Force non-commissioned officer and Cynthia Spencer's husband. He takes a strong interest in local civic life. Mr. Spencer is a regular attendee at Cibolo city council meetings and often discusses local issues with other citizens.

37. Mr. Spencer also has submitted several recent requests under the TPIA for records relating to City business, it officials, and the Cibolo Police Department (CPD). These requests sought records relating to an October 2019 police report in which Boyle falsely named Mr. Spencer as a person of interest, as detailed below.

38. Mr. Spencer's speech about the Cibolo government, its officials, and other local issues of public concern never has constituted a true threat, been intended to incite unlawful activity, or otherwise been unprotected under the First Amendment.

### *Lisa Jackson*

39. Plaintiff Lisa Jackson is the executive director for "The Little Black Dress Society," a

nonprofit providing awareness programs about domestic violence and community outreach for domestic violence victims. Mrs. Jackson served as Cibolo's mayor from 2013-2015. She is an active participant in local civic life, often attending city council meetings to speak on agenda items. Mrs. Jackson engages often with government officials and fellow citizens on Facebook to discuss local issues.

40. Mrs. Jackson has questioned and criticized the City and its officials many times. For example, for the period from 2018 to the present:

a. She has directly questioned Mayor Boyle and City staff about whether Boyle's dumping on his property was illegal, based on letters Boyle received from the City director of planning and engineering. Mrs. Jackson also shared on Facebook that she was making TPIA requests about Boyle's dumping and questioned whether he was getting a free pass from the City because of his office.

b. She has spoken out on social media and during Citizens to be Heard about Defendant Allen's fitness for office because of his history of arrests, convictions, and other run-ins with the law. Because of her position with a domestic violence nonprofit, Mrs. Jackson's commentary on Allen's criminal history has focused on law enforcement naming Allen in several reports for criminal trespass and harassment relating to his then-estranged wife, as well as several recent calls CPD received to Allen's home for family disturbance and assault. All of Allen's criminal history about which Mrs. Jackson has spoken is a matter of public record.

c. She has commented on social media about the public criminal history of Defendant Hicks and his fitness for office. Hicks's arrest and plea for theft are a matter of public record.

d. She publicly supported the recall of Boyle from his position as mayor because of Boyle's felony conviction and his failure to disclose the conviction when running for office. Mrs. Jackson also has publicly criticized the Cibolo city council's failure to remove Boyle as mayor, both on social media and during Citizens to be Heard.

e. She has emailed city officials and used Facebook to discuss with citizens and at least Defendant Allen about requiring background checks for elected officials and the Individual Defendants' opposition to those background checks.

f. Jackson has been outspoken in supporting the construction of a toll road through Cibolo, a project the Individual Defendants have opposed and sought to stop.

41. Mrs. Jackson's speech about the Cibolo government, its officials, and other local issues

of public concern never has constituted a true threat, been intended to incite unlawful activity, or otherwise been unprotected under the First Amendment.

42. Mrs. Jackson has submitted several TPIA request for records relating to City business and conduct of its officials. Several of her TPIA requests have related to the Individual Defendants. These include requests for records about an investigation of Mayor Boyle for illegal dumping, CPD logs showing officer visits to Defendant Allen's home, and police reports that Boyle and Allen filed against some of the Plaintiffs (as detailed below). Jackson has also requested records about the Individual Defendants' use of personal devices to conduct official business and their censorship of citizens on government social media pages.

### *Jennifer John*

43. Plaintiff Jennifer John is a resident of Cibolo. She is an active participant in local civic life. Ms. John often discusses local issues with officials and fellow citizens on Facebook.

44. Ms. John often comments on and criticizes City officials and their conduct. For example, for the period from 2018 to the present:

    a.  She has commented on and discussed with other citizens on Facebook Defendant Allen's past arrests, convictions, and other run-ins with the law, and his resulting lack of fitness for office. All of Allen's criminal history about which Ms. John has spoken is a matter of public record.

    b.  She has commented on and discussed with other citizens on Facebook the public criminal history of Defendant Hicks and his fitness for office. Hicks's arrest and plea to theft are a matter of public record.

    c.  She has opined on Facebook about Defendant Quinn's suitability for office.

    d.  She publicly supported the recall of Boyle from his position as mayor because of Boyle's felony conviction and his failure to disclose the conviction when running for office. She also publicly criticized the Cibolo city council's failure to remove Boyle as mayor on Facebook.

    e.  She has debated supporters of the Individual Defendants on Facebook about the effectiveness and fitness of the Individual Defendants as elected officials.

45. Ms. John's speech about the Cibolo government and its officials is often colorful, filled with rhetoric, and sometimes scathing. But her speech on these public matters never has constituted a true threat, been intended to incite unlawful activity, or otherwise been unprotected under the First Amendment.

### Amy Byrd

46. Plaintiff Amy Byrd is a resident of Cibolo. She is Brian Byrd's wife and teaches at a local elementary school. And she is an active participant in local civic life. Mrs. Byrd engages often with government officials and fellow citizens on Facebook to discuss local issues. For example:

   a.  She has criticized Quinn for calling Cibolo "the city to run from."

   b.  She has criticized Boyle for failing to disclose the felony conviction on his candidate applications.

   c.  She has commented on the city council's discrimination against dissenting speakers during Citizens to be Heard.

47. Along with her husband, Mrs. Byrd is an administrator for the "Cibolo Water Cooler" Facebook group. The group is a place of citizens to gather and discuss City government and local officials. Discussions on the group often are critical of Defendants.

48. Mrs. Byrd received two anonymous complaints at the elementary school at which she teaches, griping about Mrs. Byrd running the "Cibolo Water Cooler" Facebook group.

49. Mrs. Byrd also attended city council meetings frequently. But she stopped attending because of  the threats Mr. Byrd received after making Boyle's felony conviction public and reporting Boyle's failure to disclose to Texas Attorney General.

### Defendants retaliate against and suppress Plaintiffs' speech and activity protected under the First Amendment.

50. Defendants have under the color of law knowingly discriminated and retaliated against

11

Plaintiffs because of the critical and dissenting viewpoints each Plaintiff has expressed.

51. Defendants have also under the color of law knowingly retaliated against Cynthia Spencer, William Spencer, and Jackson because of their protected efforts to access public information that is unfavorable to Defendants.

52. Defendants' retaliatory acts would chill a speaker of ordinary firmness and in fact have chilled and otherwise harmed Plaintiffs.

53. Defendants also have unconstitutionally restricted Plaintiffs' viewpoints in public forums. They continue to restrict Plaintiffs' viewpoints in public forums.

54. Individual Defendants are allies for their acts and standing in the city government. On information and belief, they intended their unconstitutional acts to suppress dissenting viewpoints and manipulate the public discourse in their favor.

### Boyle and Allen knowingly file false police reports against Plaintiffs.

55. Between September and November 2019, Boyle and Allen made several unfounded reports to CPD claiming John, Jackson, Brian Byrd, and William Spencer committed a crime or were persons of interest related to a crime.

56. Boyle and Allen filed these reports knowing they had no legitimate basis for making any police report against these Plaintiffs. They filed these reports to retaliate against Plaintiffs for publicly criticizing Boyle, Allen, and the other Defendants. They also intended to retaliate against the Spencers and Jackson for making TPIA requests about the official conduct and criminal history of Boyle and Allen.

57. Boyle and Allen intended their false reports to shape the public discourse in their favor. They intended to chill Plaintiffs and other citizens from further criticizing Boyle and Allen and from seeking and publishing public records about both men.

58. Boyle and Allen both made these false police reports under the color of state law. Boyle and Allen intended their positions as elected officials to influence CPD's investigation of their false reports to Plaintiffs' detriment. Moreover, Allen used his official city email account to communicate with CPD officers and other city officials about his false police reports against Jackson, John, and Brian Byrd.

59. On information and belief, Boyle also used his official city email account to communicate with CPD officers and detectives about his false police reports against Jackson, John, and William Spencer. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Boyle's October 13, 2019 false police report against John, Jackson, and William Spencer.

60. On October 13, 2019, Boyle falsely reported to CPD that John made a "terroristic threat" against him in his capacity as a public servant. Boyle also falsely named Jackson and William Spencer as persons of interest.

61. Boyle reported the following comment John posted in a Facebook group where citizens discuss local issues:



62. John's comment was not a threat. Any reasonable government official would have understood John's comment as political rhetoric protected by the First Amendment.[1]

63. Boyle had no legitimate purpose in reporting John's comment as a "terroristic threat" against a public servant. And Boyle knew he had no legitimate basis to make a report against John. John's comment did not name Boyle or any other person. And he knew John made the comment in a Facebook group where citizens often used rhetoric, hyperbole, and other colorful language in discussing the City and its officials.

64. As well, any reasonable official would have known there was no basis to report Jackson or William Spencer to the police. Boyle knew he had no legitimate purpose in naming Jackson or

---

[1] *Watts v. United States*, 394 U.S. 705 (1969) (holding a speaker's statement at a political rally about putting the president in the sights the speaker's rifle was protected political hyperbole).

William Spencer as persons of interest.

65. Jackson's comments on the Facebook thread were not threatening or even insulting. Boyle had no information or other basis to reasonably believe Jackson had communicated any threat against Boyle or even aided John in making her constitutionally protected comment.

66. William Spencer did not post in the Facebook thread. For that reason alone, any reasonable official would have known there was no basis to report William Spencer to the police. There was no information or other basis for Boyle to reasonably believe that William Spencer had communicated any threat against Boyle or even aided John in making her constitutionally protected comment.

67. In fact, Boyle wrongly reported William Spencer because in April 2019, William Spencer criticized Boyle for bullying Cynthia Spencer in a Facebook thread about the Cibolo senior citizens prom. This was six months before Boyle made his false report about a "threat."

68. In April 2019, Mr. Spencer requested Boyle meet with him to discuss the incident. Boyle requested his pastor, John Minton, serve as a mediator between the two men.

69. They met in April 2019. Mr. Minton told Mr. Spencer that a  wife's responsibility is to be obedient to her husband, that God had put Boyle in his position as Mayor, and Christians are supposed to obey authority figures.

70. Even though Cynthia Spencer was not at the meeting, the pastor referred to her TPIA request for records about Boyle's use of property. Boyle then opened a notebook in which he had documented all the negative things people had said or done to or about him in his role as mayor. He started to discuss other TPIA requests from Mrs. Spencer, implying that she was responsible for other citizens criticizing or questioning Boyle.

71.  The discussion became heated, and Mr. Spencer mentioned to Boyle something to the

effect if Mr. Spencer was thirty years younger, Mr. Boyle wouldn't be walking around on two legs. Yet when Boyle made his October 13 report, he falsely told police that Mr. Spencer threatened to shoot Boyle in the legs. Mr. Spencer never told or hinted to Boyle that he would shoot him.

72. Boyle did not inform the police in April 2019 about Mr. Spencer's comment. Instead, he waited until he made his October 13, 2019 report.

73. At the end of the April 2019 meeting, Boyle agreed to apologize to Mrs. Spencer. He has yet to apologize.

74. Because Boyle falsely and untimely named William Spencer in his report, a CPD officer requested Mr. Spencer come to the police station for an interview. When Mr. Spencer arrived, CDP's questioning did not focus on John's Facebook comment. Rather, CPD questioned Mr. Spencer about the April 2019 meeting with Boyle and Boyle's pastor.

75. Boyle made his baseless report against John, Jackson, and William Spencer in retaliation for their frequent criticism of Boyle and the other Defendants on issues of public concern, against Cynthia Spencer for her frequent criticism of Boyle and the other Defendants on issues of public concern, and against Jackson and the Spencers for making seeking public records about Boyle.

76. Boyle intended the false report to chill or outright stop John, Jackson, and the Spencers from exercising their constitutional right to criticize Boyle and other local officials. By chilling these Plaintiffs' First Amendment rights, Boyle hoped to prevent negative information about him and the other Defendants from reaching other citizens.

77. Boyle made his report intending, under the color of his elected office, to persuade CPD to investigate and charge Jackson, John, and William Spencer. For example, after Boyle made his complaint, CPD officers and the City manager emailed each other about "the Mayor's complaint"

against John and William Spencer. The city manager forwarded this discussion to Boyle's official city email address.

<u>Boyle's October 21, 2019 false police report against John and Jackson.</u>

78. On October 21, 2019, Boyle called CPD and falsely reported that John and Jackson used abusive language in a public place. Boyle at first did not specify to CPD any abusive or threatening language. He merely demanded an officer come to his home.

79. The CPD officer on the phone requested details. So Boyle claimed his neighbor told him a female drove by the neighbor's home asking where the mayor lived, only to drive off cursing at the neighbor. Boyle told the officer he thought the incident related to the "prior reports" Boyle made against John and Jackson, including the October 13 report detailed above.

80. Boyle told the officer that he was out of town and his wife was home alone. But at no time did Boyle's wife or neighbor call the police about a female cursing at or threatening them.

81. Upon arriving at Boyle's home, the officer met with Boyle's wife and his neighbor. The neighbor is a Boyle political supporter, having a Boyle sign in her yard at the time of the report. The neighbor informed the officer the cursing woman was in a white Chevrolet SUV, around 50 years old, taller and thin, and with a light brown "bob" haircut.

82. John and Jackson did not commit the acts Boyle and his neighbor described. And neither John nor Jackson have brown hair or are tall. And neither owned nor drove a white SUV in October 2019, which the investigating officer confirmed.

83. After speaking with the neighbor, CPD officers went to nearby homes and reviewed video footage from doorbell cameras positioned to record any activity at Boyle's neighbor's home. None of this video footage showed what Boyle and his neighbor described.

84. Any reasonable official would have known there was no legitimate basis for reporting

John and Jackson to the police under the circumstances. And no reasonable official would report a citizen to the police for merely cursing in public.

85. Boyle understood he had no legitimate purpose making the October 21 report. He had no information or other basis to reasonably believe that John or Jackson had threatened or cursed at his neighbor or his wife.

86. Boyle made the false report in retaliation against John and Jackson because they frequently criticized Boyle and the other Defendants on issues of public concern, and in retaliation against Jackson for seeking public records about Boyle.

87. Boyle made the false report intending, under the color of his elected office, to persuade CPD to investigate and charge John and Jackson. For example, Boyle made the report instead of his wife or his neighbor despite being out of town. And Boyle initially refused to provide details to CPD, hoping his status as mayor would lead to CPD investigating John and Jackson.

88. Boyle made the false report hoping to chill, or outright stop, John and Jackson from exercising their constitutional right to criticize Boyle and other local officials. By chilling these Plaintiffs' First Amendment rights, Boyle hoped to prevent negative information about he and the other Defendants from reaching other citizens.

<u>Allen's pattern of false police reports against John, Jackson, and Byrd in fall 2019.</u>

89. In September 2019, Allen's wife falsely reported to CPD John and Jackson had been engaged in "harassment" and "cyber-bullying" on Facebook.

90. Allen followed up this unfounded report with several false reports of his own. Using his official city email address "mallen@cibolotx.gov," Allen emailed CPD throughout September and October 2019 asking them to expand and intensify their investigation against John and Jackson.

91. Allen's email complaints attached several screenshots showing comments John and Jackson made in various Facebook groups, including Allen's "District 5" Facebook group, as well as emails from Jackson.

92. John's and Jackson's comments were protected speech commenting on Allen's work as a councilman and his fitness to hold office given his public criminal history. Exemplary comments include:



93. Any reasonable official would have known John's and Jackson's comments were protected speech and not a lawful basis for making a police report. And Allen knew this as well. In fact, many of the Facebook comments Allen complained were "harassing" him were posted in Facebook groups of which Allen was not a member.

94. Over time, Allen grew more brazen in his false reporting. On October 14, 2019, he emailed CPD Detective Jennifer Walls falsely claiming that John and Jackson made a death threat against elected officials. No comment in the screenshots Allen provided was a true threat or otherwise unprotected speech. On information and belief, Allen was referring to the rhetorical "Kevlar" comment John posted on Facebook and on which Boyle had filed his false police report a day earlier. Allen knew there was no reasonable basis to claim John or Jackson made a death threat against an official.

95. He then emailed Detective Walls again on November 9, 2019 and asked Walls to expand CPD's criminal investigation to Plaintiff Brian Byrd and another Cibolo citizen, Jim Russel. Like with John and Jackson, Allen reported Byrd and Russel using his official email address.

96. Allen asked CPD to criminally investigate Byrd's opinion about Allen's public criminal history:



97. Any reasonable official would have known Byrd's post was protected pollical opinion and not a lawful basis for making a police report.

98. On information and belief, Allen has continued to email CPD officers from his government email address to push them to investigate Byrd for "harassment." The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

99. Allen also pushed CPD to investigate Jackson for protected activity that no reasonable official could believe was criminal. For example, in August 2019, Allen emailed CPD chief of police Bryan Hugghins suggesting that this email from Jackson was extortion or blackmail:



100. Allen also reported Jackson to CPD for filing a good faith complaint against Allen with the Texas Ethics Commission, alleging Allen violated the state election code. On February 27, 2020, the Ethics Commission issued an agreed resolution, finding credible evidence Allen violated the election code and fining him $200.00.

101. Allen boasted on Facebook about his police reports against Jackson and John, expressing his "pray[er]" that Jackson and John "will be held accountable for their deplorable behavior." Allen also complained on Facebook that CPD had not held John and Jackson accountable despite his barrage of reports.

102. Allen made each of his false reports intending, under the color of his elected office, to persuade CPD to investigate John, Jackson, and Byrd. Allen made his false reports in retaliation against John, Jackson, and Byrd for their protected speech criticizing Allen on issues of public concern; against John and Jackson for publishing details about Allen's public criminal history;

against Jackson for seeking public records about Allen and the other Defendants; against Jackson for exercising her right to petition the government about Allen's campaign ethics; and against Byrd for making public Boyle's felony conviction and petitioning the state of Texas as the complaining witness in the pending criminal case against Boyle.

103. Allen's use of his official city email address to send reports to CPD shows Allen was at all times acting under color of law.

104. Allen made the false reports hoping to chill, or outright stop, John, Byrd, and Jackson from exercising their constitutional right to criticize Allen and the other Defendants. By chilling these Plaintiffs' First Amendment rights, Allen hoped to prevent negative information about him and the other Defendants from reaching other citizens.

### The Individual Defendants' unconstitutional acts of blocking Plaintiffs from official social media pages and deleting comments because of viewpoint.

105. The Individual Defendants have used their Facebook pages and groups to censor Plaintiffs' speech about the Individual Defendants and other local issues of public concern. They have done this intending to suppress Plaintiffs' criticism and dissenting viewpoints from the public discourse.

106. The Individual Defendants created, operated, and currently operate these Facebook pages and groups under color of state law.

107. Facebook.com, by its very nature, is highly compatible with and used for openly expressive activity. Such expressive activity has and continues to include open and critical discussion of government conduct and policy, elected government officials, and other public figures.

108. On information and belief, the Individual Defendants were fully aware of Facebook.com's high compatibility with and use for openly expressive activity when creating and

making available to the public their Facebook pages and groups.

<u>Boyle's deletion of Plaintiffs' comments because of the viewpoint expressed.</u>

109. Boyle created and administers the Facebook page "Stosh Boyle, Mayor of Cibolo," which has a URL of  https://www.facebook.com/StoshBoyleForMayor/.

110. Boyle's Facebook page was at all times relevant and remains a public forum subject to First Amendment protections.

111. Boyle operates the page under the color of law in his capacity as mayor. The title of the page shows it is about "Mayor of Cibolo." The "About" section of the page states it is for a public figure. And Boyle uses the page to discuss official city business. Boyle posts often on his page to inform citizens about city-sponsored programs and events, alert citizens of issues related to the coronavirus, show his mayoral appearances in the community, and discuss acts of other city officials like the Individual Defendants.

112. Boyle's Facebook page does not have a moderation policy. And because it is a Facebook page, rather than a group, Boyle cannot turn off comments. In other words, the page is open to the public to comment on the various posts Boyle makes about city business.

113. Over at least the past year, Boyle has deleted several comments, comment threads, and entire posts containing comments because citizens expressed viewpoints critical of or disagreeable to Boyle that he wants to suppress from the public discourse.

114. For example, in December 2019, Boyle posted on his Facebook page about a mural the city was funding. Cynthia Spencer posted a comment asking Boyle why the City was not allowing citizens to provide input on a government-funded mural. Jackson posted a comment on the same post criticizing Boyle for throwing city staff "under the bus" about the mural's funding. And John posted comments about Boyle deleting comments from his page. Other citizens posted

comments criticizing Boyle and the city's project.

115. Because of the unfavorable viewpoints Cynthia Spencer, John, Jackson, and other citizens expressed on the post, Boyle deleted the post and the comments. None of the comments critical of or unfavorable to Boyle were threatening or otherwise unprotected speech.

116. Boyle has also deleted comments and entire posts with comments from Cynthia Spencer, Jackson, and John that discussed Boyle's criminal history, his failure to disclose his felony conviction on his candidate form, and his fitness for office.

117. Boyle deleted Cynthia Spencer's, Jackson's, and John's comments and posts containing the comments because of the viewpoint expressed. Boyle knowingly sought to suppress these negative comments and information from the many citizens who visit and interacted on his Facebook page.

118. On information and belief, Boyle has never deleted comments or a post with comment because of the viewpoint a supporter expressed, even if the supporter were disruptive or uncivil to another citizen on the comment thread. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

119. Boyle's deleting comments and posts containing comments because he disagreed with the viewpoint expressed directly restricted Cynthia Spencer's, Jackson's, and John's First Amendment right to freedom of speech.

120. Boyle's viewpoint-based deleting of comments and posts also violated Plaintiffs' and other citizens' First Amendment right to view and receive information.

121. Boyle's deleting entire posts and associated comments to prevent Plaintiffs and others from seeing citizen comments on matters of public concerns was also an unreasonable restriction on speech and speakers in a public forum.

122. Boyle's viewpoint-based deleting of comments and posts containing comments was also unconstitutional retaliation against Cynthia Spencer, Jackson, and John for their criticism of Boyle and their requesting and publication of negative public information about Boyle.

<u>Allen blocks citizens and deletes their comments from his public Facebook group because of the viewpoint expressed.</u>

123. Allen created and administers the Facebook group "Cibolo District 5," which has a URL of  https://www.facebook.com/groups/1995276237201875/.

124. Allen's Facebook group was at all times relevant and remains a public forum subject to First Amendment protections.

125. Allen created and operates his Facebook group under the color of law in his capacity as a city councilman. The front page for the group shows this:



126. The homepage for the group states Allen created the group "to provide citizens of Cibolo who live in District 5 with information about things that are happening within the city of Cibolo that may affect or be of interest to residents in District 5." Allen is a page administrator, and he posts in the group about city business, such as city-sponsored programs and events and public service announcements.

127. Allen configured his Facebook group to allow members to post comments in response to information posted on the page or in response to comments from other citizens. The group has a limited albeit viewpoint-based moderation policy: "[p]lease do not post offensive material or offensive comments. Violators will be muted or removed from this group at our admin's

discretion."

128. While citizens who want to join and comment in Allen's Facebook group must get Allen's approval, Allen publicly represents that the group is open to anyone who can show they reside in Cibolo District 5. Allen generally approves persons who can verify they reside in District 5.

129. On information and belief, Allen has also approved many non-District 5 residents to join the group. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

130. In creating and administering his "District 5" Facebook group, Allen deliberately created an interactive forum for citizens who wish to receive information about and comment on matters of public concern.

131. Over the past two years, Allen has deleted several comments, "muted" and suspended speakers from the group. He also has not allowed some District 5 residents to join the group. Allen has done this because he disagrees with  the viewpoints these citizens have expressed and wishes to suppress those viewpoints from the public discourse.

132. For example, Plaintiff Jackson is a resident of Cibolo District 5. Jackson has made several requests to join Allen's District 5 Facebook group. Allen at all times knew Jackson resides in District 5. Yet Allen has knowingly denied Jackson access to a public forum and the ability to receive information about and comment on matters of public concern relevant to her community.

133.  Allen has denied and continues to deny Jackson access to this interactive public forum because she criticized Allen publicly, published public information about Allen's criminal history, and sought public records about Allen's official business and his criminal history. In other words, Allen has blocked Jackson from a public forum because of her viewpoints.

134. As another example, Plaintiff John is a resident of Cibolo District 5. Allen knew at all times that John resides in District 5. And until August 2019, John was a member of Allen's District 5 Facebook group.

135. While she was a member, John posted several comments criticizing or questioning Allen and Boyle. For example, John posted comments agreeing with another group member that Boyle had no right to run for office because of his felony conviction. John also posted a comment criticizing Allen for allowing negative "memes" about Plaintiff Byrd to remain on his page, when Allen was deleting comments from citizens unfavorable to Allen. Because he disagreed with John's viewpoint and wanted to suppress negative comments about himself and Boyle, Allen deleted the posts containing John's and other citizens' comments.

136. In August 2019, Allen suspended John from his District 5 Facebook group and knowingly denied John access to receive information about and comment on matters of public concern relevant to her community. Allen did this despite John's residence in District 5.

137. Allen has denied and continues to deny John access to this interactive public forum because of she publicly criticized Allen and published public information about Allen's criminal history. In other words, Allen has blocked John from a public forum because of her viewpoints.

138. Allen has also denied Cynthia Spencer and Amy Byrd access to his District 5 Facebook group, despite generally allowing other citizens who are not District 5 residents to join the group. Allen has denied and continues to deny Mrs. Spencer and Mrs. Byrd access to his group because they criticized Boyle and Allen. In other words, Allen has blocked Spencer and Byrd from a public forum because of their viewpoints.

139. Other residents of District 5 have commented on Facebook about Allen muting speakers and deleting comments from Allen's District 5 page because of the viewpoints they

expressed, including viewpoints critical of Allen and Boyle. Allen has also knowingly denied other District 5 residents access to his Facebook group because he disagrees with their viewpoints and wishes to suppress them from the public discourse.

140. On information and belief, Allen has never deleted comments favorable to him or deleted a supporter's comments, even if the supporter posted something "offensive" in violation of the group's moderation policy. Indeed, Allen's viewpoint-based moderation policy is a shield for his viewpoint-based suppression of speech in a public forum. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

141. Allen's viewpoint-based deleting of comments and denying access to his interactive Facebook group directly restricted and continues to restrict Jackson's, John's, Cynthia Spencer's, and Amy Byrd's First Amendment right to freedom of speech.

142. Allen's viewpoint-based deleting of comments and denying access to his interactive Facebook group was and remains a violation of Plaintiffs' and other citizens' First Amendment right to view and receive information.

143. Allen's viewpoint-based deleting of comments and denying access to his interactive Facebook group also was and continues to be unconstitutional retaliation against Cynthia Spencer, Amy Byrd, Jackson, and John for publicly criticizing Allen, Boyle, and the other Defendants, and for seeking and publishing public information about Allen's criminal history.

<u>Quinn blocks citizens and deletes their comments from his public Facebook page and public Facebook group because of the viewpoint expressed.</u>

144. Quinn created and administered the Facebook page "Steve Quinn Cibolo Texas District 2 Councilman," which he used to conduct official business after he was sworn in as a city councilman in November 2019. Quinn deleted the page on or around the end of December 2019.

145. Quinn's "District 2 Councilman" webpage was a limited public forum subject to First Amendment protections.

146. Quinn operated the page in his capacity as a city councilman, as the page's title showed. Quinn used the page to discuss official city business. And because it was a Facebook page, rather than a Facebook group,  Quinn could not turn off commenting on the page. In other words, the page was open to the public for commenting.

147. Quinn deleted several citizen comments from his Facebook page, including comments from John. For example, John commented on and criticized Quinn's stance on an issue because it went against the city charter. John included an image of the South Park character "Eric Cartman" as part of her commentary. In response, Quinn deleted John's comments because he disagreed with John's viewpoint and wished to suppress negative commentary about his acts as a councilman.

148. On November 6, 2019, Quinn posted on Facebook that he would be transitioning his public official Facebook presence to the Facebook group "Cibolo District 2"

149. Quinn's group was and remains a "public" Facebook group, meaning anyone can see what is posted on the page. But Quinn must approve a citizen who wished to join the group before the citizen can post comments in the group responding to Quinn or other citizens.

150. The Facebook group was and remains a limited public forum subject to First Amendment protections.

151. Quinn has operated and continues to operate his Facebook group under the color of law. In his November 6 Facebook past, Quinn declared "all city business will be conducted" on the Facebook group, and he was opening the group to citizens regardless of their residential district.

152. Despite Quinn proclaiming his intent to create an interactive public forum, Quinn denied John or Jackson access to comment in the Facebook group after they requested to join. And

on information and belief, Quinn has blocked John from viewing any aspect of the group.

153. Because John and Jackson criticized Quinn and the other Individual Defendants, Quinn knowingly denied Jackson and John the ability comment on matters of public concern in a public forum.

154. On January 25, 2020, Quinn changed the name of his Facebook group to "Cibolo Texas Public Service Announcements," which has a URL of https://www.facebook.com/groups/740894676363643/. Quinn stated that "[t]his group is designed to provide public service announcements and is not intended to conduct Cibolo City Business." But Quinn has not explained why making public service announcements is not city business or how the operation of the page changed. After changing the name of the page, Quinn allowed Jackson to join the group. But he continues to deny John access.

155. Quinn also has denied Amy Byrd access post comments in the group, despite the group generally being open to all citizens and Mrs. Byrd requesting to join the group. Because Mrs. Byrd has criticized Defendants, Quinn knowingly denied her the ability comment on matters of public concern in a public forum.

156. Quinn's viewpoint-based deleting of comments and denying access to his interactive Facebook page and group was a direct restriction of Jackson's, John's, and Amy Byrd's First Amendment right to freedom of speech.

157. Quinn's viewpoint-based deleting of comments and denying access to his interactive Facebook group violated Plaintiffs' and other citizens' First Amendment right to view and receive information.

158. Quinn's viewpoint-based deleting of comments and denying access to his interactive Facebook page and group was also unconstitutional retaliation against Jackson, John, and Amy

Byrd for their criticism of Quinn and other Defendants, and their publication of public information about Allen's criminal history.

<u>Hicks deletes Plaintiffs' comments because of the viewpoint expressed.</u>

159. Hicks created and administers the Facebook page "Councilman District 7 City of Cibolo Joel Hicks," which has a URL of https://www.facebook.com/JoelHicksfordistrict7 CityofCibolo.

160. Hicks's Facebook page was at all times relevant and remains a limited public forum subject to First Amendment protections.

161. Hicks operates the page in his capacity as a city councilman, as the page's title shows. Hicks uses the page to discuss official city business. For example, he has used this page to inform citizens about city-sponsored programs and events and to show citizens about his appearances at meetings, events, and conferences in his capacity as an elected official. The "About" section of Hicks' page states its purpose is "[t]o keep the Citizens of Cibolo up to date on what is happening in District 7 and throughout the City of Cibolo."

162. Hicks's Facebook page does not have a moderation policy. And because it is a Facebook page, Hicks cannot turn off commenting on the page. In other words, it is open to the public for commenting on the various posts Hicks makes about city business.

163. Over the past two years, Hicks has deleted and "hidden" comments expressing viewpoints disagreeable to Hicks that he wishes to suppress from the public discourse.

164. For example, in December 2019, Hicks posted on his page an announcement about keeping valuables locked and hidden during the holiday season. In response, Plaintiffs John and Brian Byrd posted comments about Hicks's criminal history related to theft from a retail store, a matter of public record.

165. Hicks disliked John and Mr. Byrd posting and commenting on negative public information about Hicks and wished to suppress that negative information from the public discourse. So Hicks deleted or hid from public view John's and Mr. Byrd's comments from his Facebook page.

166. Hicks's viewpoint-based deleting of comments was a direct restriction of John's and Brian Byrd's First Amendment right to freedom of speech. It also violated Plaintiffs' and other citizens' First Amendment right to view and receive information.

167. Hicks' viewpoint-based deleting and hiding of comments and posts was also unconstitutional retaliation against John and Brian Byrd for their criticism of Hicks and the other Defendants and for their publication of public information about Hicks's criminal history.

### *The city council's unconstitutional policy for citizen comments and the resulting viewpoint discrimination against Plaintiffs.*

168. Defendants' pattern of censoring Plaintiffs and others because of their dissenting viewpoints extends to Defendants' acts during citizen comment periods at Cibolo city council meetings.

169. Cibolo city council meetings include a citizen comment period called "Citizens to be Heard." The policy for Citizens to be Heard is part of the agenda posted for each meeting:

> Citizens to be Heard   This is the only time during the Council Meeting that a citizen can address the City Council. It is the opportunity for visitors and guests to address the City Council on any issue to include agenda items. All visitors wishing to speak must fill out the Sign-In Roster prior to the start of the meeting. City Council may not debate any non-agenda issue, nor may any action be taken on any non-agenda issue at this time, however, City Council may present any factual response to items brought up by citizens. (Attorney General Opinion – JC-0169) (Limit of three minutes each.) All remarks shall be addressed to the Council as a body, and not to any individual member thereof. Public criticism of the City Council or any action, policy program or service provided by the City is not prohibited. However, any person making personal, impertinent, or slanderous remarks to individual members of the Council while addressing the Council may be requested to leave the meeting.

170. This policy, promulgated and adopted by the city council, contains two unreasonable restrictions on speakers and speech that invite viewpoint discrimination.

171. First, the policy prohibits "any person making personal, impertinent, or slanderous remarks to individual members of the Council" without limiting application of these subjective criteria to remarks that are also disruptive or threatening. A subjective and blanket restriction on speech based on criteria "personal, impertinent, or slanderous" is not reasonable, given the purpose of Citizens to be Heard is to provide citizens the opportunity to speak "on any issue, to include agenda items."

172. And without additional limitations on those subjective criteria, such as requiring that remarks also be "disruptive" or "threatening," city council members can and have arbitrarily restrict speech during Citizens to be Heard because of the speaker's viewpoint.

173. Second, the policy prohibits speakers from addressing remarks to any individual member of the council. This is also unreasonable given the forum's purpose. Citizens often need to address or at least mention individual members to make effective points on public issues. For example, a citizen may want to contrast or compare policy positions of different councilmembers for an agenda item or bring one councilmember's actions or positions related to an agenda item to the attention of other councilmembers.

174. Both of these unreasonable restrictions on speech have permitted Defendants to discriminate against Plaintiffs because of their viewpoint.

175. For instance, Boyle several times (including during the recent March 10 meeting) has banged the gavel or otherwise interrupted Cynthia Spencer when she needed to mention the name of Boyle or another council member to effectively speak about a local issue. Mrs. Spencer's comments were not threatening or disruptive to the meetings' proceedings and order.

176. Boyle even ordered a CPD officer at a January 2020 city council meeting to remove Mrs. Spencer from the room because she mentioned Quinn's name during Citizens to Be Heard.

Mrs. Spencer, not wanting to risk the harm from being physically removed, felt forced to self-censor and returned to her seat.

177. Defendants have also enforced the unreasonable restrictions in the Citizens to be Heard policy to censor Jackson's speech because of her viewpoint. For example, during a meeting in November 2019, another councilmember, Tim Woliver, was reading a statement Jackson asked him to present:

> "Chief, I expect that the Cibolo Police Department takes this matter VERY seriously and does not leave a residence without taking someone out of the home when your department is called to the home due to Family Violence.  I have seen reports of multiple visits to one home in particular of a sitting councilman. . . ."

Boyle banged his gavel and told Woliver he could not read Jackson's comment about police visits to a councilman's home.

178. Boyle and the other Defendants have not interrupted or stopped their supporters from speaking about council members by name or addressing remarks to individual councilmembers during Citizens to be Heard. On several occasions, Boyle in presiding over meetings has allowed citizens to praise council members by name or otherwise speak in support Boyle and the other Individual Defendants by name. Boyle and the other Individuals Defendants have permitted this even when supportive speakers do not limit their comments to agenda items.

179. Defendants have engaged in other actions to intimidate and chill speakers who express dissenting viewpoints during Citizens to be Heard periods.

180. For example, during a meeting in January 2020, Jackson was speaking on an agenda item, only for Allen to interrupt her with laughter.

181. And during Citizens to be Heard at a February 2020 meeting, Jackson complained Quinn violated the City Charter when (i) he requested citizen members of boards and committees

resign without first discussing it with the rest of the council and (ii) publicly scolded the City manager Robert Herrera during a December 2019 city council meetings.

182. After Jackson finished her comments and was walking away from the podium, Quinn demanded Jackson return to the podium, telling her "I'm not done with you." After Jackson sat down, Quinn made "I'm watching you" hand gestures at Jackson. At no time did Boyle, as presiding officer, intervene to stop Quinn's behavior.

183. The unreasonable and viewpoint-based Citizens to be Heard policy and Defendants' viewpoint-based application of the policy has been and remains a direct restriction of Cibolo citizens' First Amendment right to freedom of speech. These citizens include Jackson and Cynthia Spencer.

184. The unreasonable Citizens to be Heard policy and Defendants' viewpoint-based application of the policy has been and remains a violation of Plaintiffs' and other citizens' First Amendment right to receive information on public matters.

185. The acts of Boyle, Allen, and Quinn against Jackson and Spencer during Citizens to be Heard periods was also unconstitutional retaliation against Jackson and Spencer for their criticism of Boyle, Allen, and Quinn on matters of public concern and for Jackson's publication of public information about Boyle's and Allen's criminal history.

***The Individual Defendants' other acts of intimidation and retaliation in response to Plaintiffs' exercise of their First Amendment Rights.***

186. The Individual Defendants have subjected Plaintiffs to other acts of retaliation against Plaintiffs' exercised of First Amendment rights.

187. For example, Defendant Quinn, asserting the authority of his office as the District 2 councilman by his city official email address, personally demanded Cynthia Spencer's resignation from the District 2 zoning and planning committee. He did so without first consulting the rest of

the city council, against the rules for removing citizens from committees.

188. As another example, Defendant Hicks, using his official city email address, sent an email in October 2019 to the city manager and city secretary falsely claiming Jackson and John were sending threats to officials and citizens. Hicks copied Boyle on this email.

189. These retaliatory acts pile on the false criminal reports, viewpoint-based Facebook censorship, and the viewpoint discrimination and intimidation during Citizens to be Heard detailed above.

190. Quinn and Hicks committed these retaliatory acts hoping to chill, or outright stop, Cynthia Spencer, John, and Jackson from exercising their constitutional right to criticize Allen and other local officials. By chilling these Plaintiffs' speech, Quinn and Hicks hoped to prevent other citizens from seeing future negative comments about Defendants.

191. Other acts by the Individual Defendants show a concerted retaliatory motive toward Plaintiffs and their exercise of First Amendment rights. For example, between 2018 and now:

   a. In an email to city officials, Boyle demanded to know which citizens were voicing concerns about the city council's citizen comment policy and whether it complied with a new provision under the Texas Open Meetings Act.

   b. Boyle stated in an email to city officials that citizen criticism of him and other officials was "unwelcome."

   c. In another email to City officials, Boyle singled out Jackson for her TPIA requests seeking records about Boyle's illegal dumping on his property.

   d. Allen emailed a city employee demanding to know who sent a TPIA request seeking records about law enforcement visits to his Cibolo residence.

   e. After learning Jackson sent the this TPIA request, Allen emailed his wife that Jackson's TPIA request showed Jackson was "attempting to go after me."

   f. Allen emailed a citizen demanding she stop taking screenshots of his wife's publicly-visible Facebook page while including the other Individual Defendants as blind-copy, or "BCC," recipients of the emails

   g. Boyle and Allen each filed several false or otherwise baseless police reports under

the color of law against Plaintiffs over the same two months' time.

h.  Boyle added Hicks and Allen to an email response in which Boyle demanded to know which citizens had complained about the Citizens To Heard Policy.

i.  Hicks has tried to confront and intimidate Brian Byrd when Byrd has visited the Guadalupe County Courthouse for hearings on Boyle's pending criminal case.

**These First Amendment violations result from an unconstitutional policy or custom attributable to the City.**

192. The unconstitutional viewpoint-based and retaliatory acts of the Individual Defendants alleged above reflect an official City policy or custom of viewpoint discrimination and retaliation against citizens who routinely and assertively criticize the City government and its elected officials.

193. The unconstitutional policy for Citizens to be Heard and Individual Defendants' viewpoint-based enforcement of the policy is one example showing City's policy or custom. The city council ratified the Citizens to be Heard policy in its role as a final policymaker for the City. The policy and its viewpoint-based application were the moving force behind at least the deprivation of Jackson's and Cynthia Spencer's First Amendment rights.

194. Other acts show the City's policy or custom of retaliation and viewpoint-discrimination against assertive critics of the City and its elected officials, including Plaintiffs. These include the Individual Defendants' (i) making of false police reports, (ii) censoring Plaintiffs and other citizens on Facebook pages and groups maintained under color of law, (iii) censoring Plaintiffs' speech during city council meetings, and (iv) engaging in the other retaliatory and viewpoint-based acts detailed above.

195. The Individual Defendants, as policymakers for the City, ratified this policy or custom through these many unconstitutional acts targeting Plaintiffs' and other citizens' speech.

196. On information and belief, other council members have taken no action to intervene

or raise concerns with the Individual Defendants about their unconstitutional acts. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

197. As another example of acts of city officials' retaliation against Plaintiffs beyond those of the Individual Defendants, CPD would not immediately take a police report from Cynthia and William Spencer about their concern that a Boyle supporter menaced them during a city council meeting.

198. Likewise, when Brian and Amy Byrd asked CPD to take a report about the serious threats of bodily harm they received from Boyle supporters, CPD told them a formal complaint was unnecessary. CPD suggested the Byrds instead use the CPD mobile application to make a request for "vacation checks" on their home.

199. CPD's refusal to take reports from these Plaintiffs goes against CPD's stated practice of taking reports immediately for any citizen who wants to make one. And it shows CPD's  bias in taking several baseless reports for Allen and Boyle against John, Jackson, Brian Byrd, and William Spencer.

200. The City and its officials do not intend to cease enforcing its policy. Even after Plaintiffs' attorney sent a letter to the Cibolo city attorney in late January 2020 outlining many of the violations detailed here, the Individual Defendants have continued to retaliate and discriminate against Plaintiffs' and other citizens' exercise of their First Amendment rights on social media and during Citizens to be Heard.

**Plaintiffs have suffered harm from Defendants' unconstitutional acts.**

201. The acts of Defendants have deprived each of the Plaintiffs of his or her First Amendment right to free speech on matters of public concern, including the right to criticize and

question government officials and their decisions.

202. These acts have also deprived Jackson, Cynthia Spencer, and Brian Byrd of their First Amendment right to petition. The Individual Defendants retaliated against Jackson and the Spencers for making TPIA requests seeking public information that may reflect negatively on the Individual Defendants. And they retaliated against Byrd because of his continued involvement as a complaining witness in the pending felony case against Boyle.

203. As a result of Defendants' acts, Plaintiffs have suffered chilling harms to their speech.

204. For example, because of the false police reports Boyle and Allen filed, each of the Plaintiffs constantly fear retaliation from continuing to publicly question or criticize Defendants. Plaintiffs have suffered reputational harm from being named in these false reports. And at least Plaintiffs William Spencer and John have spent substantial money securing legal counsel for the false criminal complaints against them.

205. As another example, Mrs. Spencer resigned from her citizen position on the District 2 planning and zoning committee because of Quinn's and the other Defendants' hostility toward her viewpoints.

206. Cynthia Spencer and Jackson also have suffered humiliation and reputational harm from the Individual Defendants' treatment of them during city council meetings.

207. And Amy Byrd has stopped attending city council meetings because she fears retaliation, resulting in harm to her First Amendment right to learn about public issues.

## First Cause of Action

### Declaratory judgment and injunction — unconstitutional policy for a public forum under the First Amendment.

(Defendant City of Cibolo)

208. Plaintiffs fully incorporate by reference the allegations in Paragraphs 1-207

209. The Cibolo city council has created and maintained a citizen comment period for its

meetings, called "Citizens to be Heard." The purpose of Citizens to be Heard is to establish "an opportunity for citizens to address the council on any issue, including [meeting] agenda items."

210. Citizens to be Heard is at least a limited public forum subject to First Amendment scrutiny.

211. The policy for Citizens to for Heard is facially unconstitutional, because it is unreasonable given the purposes for which the city council created Citizens to be Heard and because it is viewpoint-based.

212. The City's policy for the Citizen to be Heard portion of city council meetings restricts speakers from "making personal, impertinent, or slanderous remarks to individual members of the Council," at risk of being asked to leave the meeting.

213. But the policy does not limit these subjective criteria by requiring remarks also be disruptive, threatening, or intended to interfere with the proceedings of city council meetings. Without this limitation, the restriction is unreasonable given the purpose of the forum to provide the opportunity to discuss any matters of public concern.

214. The restriction is also viewpoint-based, because it restricts speech based on subjective criteria "personal, impertinent, or slanderous."

215. Similarly, the policy's blanket restriction against addressing individual council members is facially unconstitutional, because it is unreasonable given the purposes of Citizens to be Heard. There are several legitimate reasons a citizen may need to address or mention a council member in commenting on a matter of public concern, including council meeting agenda items.

216. And as alleged, Defendants have used the policy as a shield to engage in viewpoint discrimination against Jackson, Cynthia Spencer, and other citizens. The policy, then, is also unconstitutional as applied to at least Jackson and Spencer's speech.

217. Plaintiffs are entitled to injunctive relief against Defendants' enforcement of the unconstitutional policy for Citizens to be Heard. Defendants' acts of censoring and chilling Plaintiffs' and other citizens' constitutionally protected speech based on their viewpoints and on unreasonable restrictions is likely to continue absent injunctive relief.

218. Absent injunctive relief, the irreparable harm to the free speech rights of Plaintiff and other citizens will continue. Plaintiffs desire to continue speaking at Citizens to be Heard on matters of public concern. And Plaintiffs desire to receive information from other citizens on matter of public concern. The current policy unconstitutionally forbids and chills these First Amendment activities. There is no adequate remedy available at law sufficient to redress Plaintiffs' injures and prevent further harm to Plaintiffs and other citizens.

219. Plaintiffs are likely to succeed on the merits of their claim. And there is substantial public interest in ensuring that citizen comment periods during open government meetings are free of unreasonable and viewpoint-based restrictions on speech and speakers.

220. Plaintiff also seeks a declaratory judgment that Defendants' policy is unconstitutional on its face and as applied to Plaintiffs' speech because it is an unreasonable and viewpoint-based restriction on speech and speakers in a limited public forum.

221. A justiciable controversy involving the continuing deprivation of Plaintiffs' free speech rights under the First and Fourteenth Amendments exists between the parties. A declaratory judgment will help resolve the dispute between the parties, provide guidance for Defendants to create a constitutional policy for Citizens to be Heard, thaw the chilling effects of Defendants' policy for Citizens to be Heard, and help further participation in local government from Plaintiffs and other citizens.

222. Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988, and for any further relief

the Court deems just and proper.

## Second Cause of Action

### Municipal liability under 42 U.S.C. § 1983

(Defendant City of Cibolo)

223. Plaintiffs fully incorporate by reference the allegations in Paragraphs 1-222.

224. At all times relevant to Plaintiffs' allegations made, Defendant City of Cibolo developed, ratified, enforced, and continues to enforce an official city policy or custom that constitutes impermissible state action intended to censor, chill, and interfere with the First Amendment activity of citizens who insistently criticize the City government and its elected officials and to retaliate against those citizens for that criticism.

225. These citizens include Plaintiffs for the reasons shown in their allegations.

226. The City's unconstitutional policy or custom was and remains a decision retaliate against (i) Plaintiffs and other citizens who criticize and question the City and its elected officials, including the Individual Defendants, and (ii) Plaintiffs and other citizens who request and publish negative public information about the City's elected officials, such as criminal histories.

227. The City's unconstitutional policy or custom also was and remains a decision to restrict and discourage Plaintiffs and other citizens from exercising their right to freely criticize their elected officials, express viewpoints on matters of public concern with which Defendants disagree, and request and publish negative public information about the City and its elected officials.

228. This policy was ratified by final policymakers for the city, including the mayor and the city council.

229. The Individual Defendants' acts of retaliation, viewpoint discrimination, and censorship made under color of law exemplify the ratification and enforcement of the City's policy

or custom.

230. The viewpoint-based and unreasonable policy for Citizens to be Heard, which Defendants have used and continue to use as a shield for unconstitutional acts, also shows the City's broader policy of retaliating against and suppressing dissenting speech and speakers.

231. To advance the City's unconstitutional policy or custom, the Individual Defendants, through their positions as final policymakers for the City, knowingly influenced and encouraged other City officials and employees to act in furtherance of the City's policy. This includes, for example, Boyle and Allen using the color of their offices to push CPD to investigate Plaintiffs Jackson, John, Brian Byrd, and William Spencer on baseless complaints in retaliation for those Plaintiffs exercising their First Amendment rights.

232. The official City policy or custom was the moving force behind the Individual Defendants' acts of retaliation and censorship, and the resulting harm to Plaintiffs, as detailed in this Complaint.

233. At all times relevant, Defendants were or should have been aware that the official policy or longstanding custom as alleged was unconstitutional.

234. As a direct and proximate cause of the City's unconstitutional official policy or longstanding custom, Plaintiffs were deprived of their First Amendment rights to free speech and to petition. They have suffered and continue to suffer harm to their reputation, public embarrassment, fear of criminal prosecution, fear of further harassment, retaliation, and other adverse actions from Defendants, and attorneys' fees and costs.

235. As a result, Plaintiffs are entitled to actual and compensatory damages against Defendant City of Cibolo under 42 U.S.C. § 1983, in an amount to be proven at trial.

236. Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988, and for any further relief

the Court deems just and proper.

### Third Cause of Action

**Unconstitutional restriction of freedom of speech under the First Amendment and 42 U.S.C. § 1983**

(Defendants Boyle, Allen, Quinn, and Hicks in their individual capacities)

237. Plaintiffs fully incorporate by reference  the allegations in Paragraphs 1-236

238. Defendants Boyle, Allen, Quinn, and Hicks have knowingly restricted and continue to knowingly restrict Plaintiffs' rights to free speech under the First Amendment.

239. Defendants Boyle, Allen, Quinn, and Hicks each have knowingly created and administered, and continue to administer, Facebook pages and groups that are limited public forums. Defendants created these Facebook pages and groups (i) to provide information about Cibolo government and its officials to Cibolo citizens and (ii) to allow citizens to comment on and discuss those matters with officials and citizens on the Facebook page or group.

240.  The Individual Defendants violated the First Amendment rights of Plaintiffs Jackson, John, Cynthia Spencer, and Brian Byrd by deleting and hiding from view their comments from these limited public forums because of the viewpoints these Plaintiffs expressed.

241. The Individual Defendants violated and continue to violate the First Amendment rights of Plaintiffs Jackson, John, Cynthia Spencer, and Amy Byrd by blocking them or otherwise denying them access from these limited public forums because of the viewpoints these Plaintiffs have expressed.

242. This ongoing blocking or otherwise denial of access is also an impermissible prior restraint in violation of Jackson's, John's, Cynthia Spencer's, and Amy Byrd's First Amendment rights.

243. In deleting and hiding comments and blocking Plaintiffs because of the viewpoints they expressed, the Individual Defendants also violated the First Amendment rights of the

Plaintiffs and other citizens to receive information and ideas about public issues.

244. Defendants' undertook the acts alleged in this Complaint at all times under the color of law.

245. Plaintiffs seek a declaratory judgment against Individual Defendants that deleting and hiding comments on and denying access to their Facebook pages and groups based on their disagreement with Plaintiffs' viewpoints violates the First Amendment.

246. A justiciable controversy involving the continuing deprivation of Plaintiffs rights to speak on the Individual Defendants' social media pages and groups free of viewpoint discrimination exists between the parties. A declaratory judgment will help resolve the dispute between the parties, guide Defendants on their constitutional obligations for their Facebook pages and groups going forwards, thaw the chilling effects of Defendants' acts, and further participation in local government from Plaintiffs and other citizens.

247. Plaintiffs Jackson, John, Cynthia Spencer, and Amy Byrd are also entitled to injunctive relief against Individual Defendants, if any Individual Defendant is continuing to deny them access to his Facebook page or group operated and administered under the color or law.

248. Defendants' denying these Plaintiffs access to a public forum because of their viewpoints is likely to continue absent injunctive relief.

249. Jackson, John, Cynthia Spencer, and Amy Byrd have suffered and will continue to suffer considerable and irreparable harm without injunctive relief. They desire to receive information and participate in the public discourse on the Individual Defendants Facebook pages and groups. There is no adequate remedy available at law sufficient to redress these Plaintiffs injures and prevent further harm to them and others.

250. These Plaintiffs are likely to succeed on the merits of their claims. There is also

substantial public interest in ensuring that the Individual Defendants cease engaging in viewpoint-based restriction speech in public fora.

251. Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988, and for any further relief the Court deems just and proper.

### Count IV

**Unconstitutional retaliation against the exercise of rights to free speech and to petition under the First Amendment and 42 U.S.C. § 1983.**

(Defendants Boyle and Allen in their individual capacities)

252. Plaintiffs fully incorporate by reference the allegations in Paragraphs 1-251.

253. Defendants Boyle and Allen each willfully retaliated against Plaintiffs because Plaintiffs exercised their right to free speech and right to petition.

254. Boyle and Allen retaliated against Plaintiffs under the color of law.

255. Boyle's acts of retaliation and intimidation include: (i) making false or otherwise baseless police reports against Plaintiffs Jackson, John, and William Spencer and (ii) interfering with and restricting the constitutional right of Cynthia Spencer, Jackson, and John to speak on matters of public concern in limited public forums.

256. Boyle retaliated against Plaintiffs because (i) Plaintiffs criticized and questioned Boyle and the other Defendants' fitness to govern and their acts as elected officials, and (ii) Jackson and the Spencers requested public records containing negative information about Boyle and the other Defendants, and published and commented on that information to others.

257. Allen's acts of retaliation and intimidation include: (i) making false or otherwise baseless police reports against Plaintiffs Jackson and John and (ii) interfering with and restricting the constitutional right of Cynthia Spencer, Jackson, John, and Brian Byrd to speak on matters of public concern in limited public forums.

258. Allen retaliated against Plaintiffs because (i) Plaintiffs criticized and questioned Allen

47

and the other Defendants' fitness to govern and their acts and policy positions as elected officials, (ii) Jackson requested public records containing negative information about Allen and the other Defendants, (iii) Jackson and John published and commented on that negative information to others, and (iv) Byrd was and remains a complaining witness in the felony tampering case pending against Boyle, with whom Allen is allied in the City government.

259. In retaliating against Plaintiffs, Boyle and Allen were substantially motivated to chill and discourage Plaintiffs and other citizens from (i) criticizing them and the other Defendants and (ii) seeking and publishing public information about Boyle, Allen, and the other Defendants. By chilling and discouraging the exercise of First Amendment rights, Boyle and Allen hoped to suppress negative information and commentary from the public discourse.

260. Boyle's and Allen's actions violated Plaintiffs' clearly established rights under the First and Fourteenth Amendments.

261. A reasonable elected official would have understood it unconstitutional to file a false or otherwise baseless police report against a citizen because that citizen criticized the official or sought and published negative public information about the official.

262. A reasonable elected official would have understood it unconstitutional to deny a citizen access to or deleted comments from a social media page based on the citizen's viewpoint, when the official operated the social media page under the color of law

263. Boyle's and Allen's retaliatory acts injured Plaintiffs in a way likely to chill a person of ordinary firmness from further participation in First Amendment protected activity, including the protected activity in which Plaintiffs engaged.

264. Boyle and Allen have knowingly and willfully retaliated against Plaintiffs with a reckless and callous disregard for, and deliberate indifference to, their First Amendment rights.

265. As a direct and proximate cause of Boyle and Allen's unlawful acts, Plaintiffs have been deprived of their rights under the First Amendment and suffered damage to their reputation, public embarrassment, and fear of criminal prosecution and further retaliation if they criticize or question Defendants.

266. Plaintiffs are entitled to actual, compensatory, and punitive damages against the Boyle and Allen under 42 U.S.C. §1983 in an amount to be proven at trial.

267. Plaintiffs also seek a declaratory judgment that Boyle's and Allen's acts were unconstitutional retaliation against Plaintiffs' exercise of their First Amendment rights to freedom of speech and freedom to petition.

268. A justiciable controversy involving the continuing deprivation of Plaintiffs' First Amendment rights exists between the parties. A declaratory judgment will help resolve the dispute between the parties, guide Boyle and Allen on complying with their constitutional obligations in the future, thaw the chilling effects of Boyle and Allen's retaliatory acts, and help further participation in local government from Plaintiffs and other citizens.

269. Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988, and for any further relief the Court deems just and proper.

## Count IV
### Civil conspiracy to deprive constitutional rights under—42 U.S.C. § 1983
(Defendants Boyle, Allen, Quinn, and Hicks in their individual capacities)

270. Plaintiffs fully incorporate by reference here the allegations in Paragraphs 1-269.

271. The Individual Defendants expressly or tacitly agreed to retaliate against and intimidate Plaintiffs and other outspoken citizens for the exercise of their constitutional rights to criticize Defendants, express dissenting viewpoints on matters of public concern, and seek and publish public information unfavorable to Defendants. They also agreed to restrict Plaintiffs' and

other citizens' exercise of these rights. Acts reflecting this retaliatory agreement include without limited those stated in Paragraph 191.

272. The Individual Defendants intended their agreement, and their acts under the agreement, to chill and discourage Plaintiffs and other outspoken citizens from exercising their First Amendment rights to criticize the City and the Individual Defendants, express dissenting viewpoints on matters of public concern,  and seek and publish public information unfavorable to Defendants.

273. As detailed in this Complaint, each of the Individual Defendants engaged in acts retaliating against Plaintiffs' and other citizens' clearly established First Amendment rights.

274. The Individual Defendants undertook their agreement and related acts under the color of law.

275. No reasonable official would have so unlawfully, willingly, and arbitrarily conspired to deprive Plaintiffs of their constitutional rights.

276. The Individual Defendants knowingly and willfully conspired against Plaintiffs and other outspoken citizens with a reckless and callous disregard for, and deliberate indifference to, their First Amendment rights.

277. As a direct and proximate cause of the Individual Defendants' unlawful agreement and related acts, Plaintiffs have been deprived of their rights under the First Amendment to the United States Constitution, and suffered damage to their reputation, public embarrassment, and fear of criminal prosecution and further retaliation if they criticize or question Defendants.

278. Plaintiffs are entitled to actual, compensatory, and punitive damages against the Individual Defendants under 42 U.S.C. §1983 in an amount to be proven at trial.

279. Plaintiffs also seek a declaratory judgment that the Individual Defendants' agreement

and related acts constituted an unlawful conspiracy to deprive Plaintiffs of their First Amendment rights to freedom of speech and freedom to petition.

280. A justiciable controversy involving the continuing deprivation of Plaintiffs' First Amendment rights exists between the parties. A declaratory judgment will help resolve the dispute between the parties, guide Defendants in meeting their constitutional obligations going forward, and thaw the chilling effects of the Individual Defendants' acts, and help further participation in local government from Plaintiffs and other citizens.

281. Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988, and for any further relief the Court deems just and proper.

## JURY DEMAND

Under Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs prays for judgment against Defendants, individually, jointly, and severally, as follows:

1. A declaratory judgment that the City's policy for the Citizens to be Heard is unconstitutional under the First Amendment because it is unreasonable given the purpose of Citizens to be Heard and it is viewpoint-based.

2. Injunctive relief enjoining Defendants from enforcing the City's policy for Citizens to be Heard.

3. A declaratory judgment that Boyle's and Allen's making of false or otherwise baseless police reports against Jackson, John, Byrd, and William Spencer was unconstitutional retaliation against Plaintiffs' exercise of their First Amendment rights to free speech and to petition.

4. A declaratory judgment that the Individual Defendants blocking of Plaintiffs from accessing and commenting on their Facebook pages operated under color of law is (i) an unconstitutional viewpoint-based restriction of Plaintiffs' freedom of speech and (ii) unconstitutional retaliation against Plaintiffs' exercise of their First Amendment rights

to free speech and to petition the government.

5. Injunctive relief compelling Defendants and their employees, agents, servants, officers, and persons in concert with Defendants, to permit Plaintiffs to join any Facebook group Defendants operate under the color of law, if Plaintiffs have requested to join the group and Defendant(s) have denied that request.

6. Compensatory damages in such amount as may be found, or as otherwise permitted by law.

7. Punitive damages against the Individual Defendants in such amount as may be found, or as otherwise permitted by law, for their retaliatory intent toward Plaintiffs and for acting with reckless and callous disregard for the clearly established constitutional rights of Plaintiffs.

8. For Plaintiffs' attorneys' fees, costs, and disbursements.

9. For such other and further relief as the Court may deem just and proper.


Dated: March 20, 2020                              Respectfully submitted,

                                                   /s/ JT Morris
                                                   JT Morris
                                                   Texas State Bar No. 24094444
                                                   jt@jtmorrislaw.com
                                                   JT Morris Law, PLLC
                                                   1105 Nueces Street, Suite B
                                                   Austin, Texas 78701
                                                   Tel: 512-717-5275
                                                   Fax: 512-582-2948

                                                   Attorneys for Plaintiffs Cynthia Spencer, William Spencer, Lisa Jackson, Jennifer John, Brian Byrd, and Amy Byrd.